case number 24-2408, Williams v. United States. Mr. Spicer, whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Jack Spicer, and I'm appearing on behalf of Troy Williams, who wants to thank you for your time and attention to this case, although he couldn't be here today. Vermont employers are ordinarily, but not automatically, afforded immunity from civil actions brought by employers or by employees for on-the-job injuries. Vermont's Workers' Compensation Act was designed to provide the remedy available to those employees. The Act strikes a bargain between employers and employees, whereby employees receive compensation for their injuries, independent of proof of fault, and employers receive limited and determinate liability. Now, underpinning this bargain is a mandate that Vermont employers secure compensation for their employees. When an employer fails to secure compensation, the Act restores the employee's right to bring a civil action against their employer for full damages. The District Court in this case erred in two important respects. First, by finding that Vermont employers in a multi-employer business scenario can avoid the mandate by reaching agreements between themselves. And second, by finding that an employee cannot receive both workers' compensation benefits and bring a civil action against their employer. On the first point, Vermont employers cannot avoid the mandate to secure compensation for their employees by agreement, contract, rule, or any other device whatsoever. This is the statutory language of Section 625. Vermont's Act has a... Well, why didn't the USPS secure compensation for employees by requiring RSD to get workers'  Thank you, Your Honor. Under Vermont's Workers' Compensation Act, Section 687, there's a list of ways that an employer must secure compensation for their employees. I think there's four different ways. There's no disagreement between the parties in this case that the United States didn't comply with Section 687's securing compensation requirements. And the other point is that the purpose of Vermont having a broad definition of employer under the Act was so that... I'm sorry. So the USPS entering a contract with RSD to secure workers' compensation doesn't qualify.  First, because it violates Section 627's requirements for securing compensation. And... How is that? Because the ways that an employer must secure compensation under Section 687 are listed and exhaustive. The other point is, under Section 625, no employer can contract out its obligations to secure compensation. And this includes by requiring independent contractors to secure compensation for their employees. There's a suggestion by your adversary that that section means that you can't contract with the employee for the employee to basically give up that. Why isn't your argument today foreclosed in large part by the Vermont Supreme Court's decision in Candido v. Polymers? Candido was brought under a different exception to the exclusive remedy under Vermont's Workers' Compensation Act. That case was actually brought under the exception for Section 624, which provides employees the remedy against third parties. There's no discussion about the exception under Section 618B, which is... But in Candido, the court found the manufacturer to be an employer. And it said, allowing an employee with more than one employer to collect workers' compensation benefits from the first employer and then turn around and sue the second in negligence frustrates this policy. So I again have to ask you, why doesn't that foreclose your argument here? It doesn't foreclose the argument because under Section 618, there's another purpose. It's an independent purpose. Section 618 was designed to sanction employers who did not secure compensation for their employees pursuant to Section 687. Here, the employer of the United States would be getting away with not securing compensation for their employees and having no liability under the Act. So your basic point about Candido is it's the exact same facts and involves some of the same policy considerations, but the specific argument about Section 687 was not at issue in that case. Is that what you're saying? It wasn't an issue in that case, but I think the other point is the policy considerations are different because under Section 618, the policy concern is employers hiring independent contractors to carry out some phase of their work without securing compensation for those  But the employee here was, I mean, this is not a case in which there was such an evasion, right? I mean, the employee was compensated appropriately, fully under the workers' compensation laws. Because RSD did have workers' comp insurance. While Mr. Williams was compensated from RSD transportation, that fact alone does not foreclose his opportunity or his right to sue the United States as a general contractor. Under Section 618D, we have the waiver language. In Smith, the court decided that that language actually prescribes what must take place in order to effect a waiver, and it must be strictly complied with. Otherwise, the employee retains that right to sue, and it requires a written waiver that is knowingly signed by the employee, filed with the commissioner, and approved by the  None of that occurred here. There's no waiver under Section 618. One other question about this. You seem to accept the premise of the question, that is that the Postal Service required RSD to get workers' compensation insurance. Do you? I mean, you don't dispute that that was true? I don't dispute that that was true. Under Section 625, though, an employer cannot contract out that obligation to an independent contractor. And this goes back to the purpose. I understand that's your legal argument, but you do not dispute that RSD was required by its contract with the Postal Service to get insurance, workers' compensation insurance. Well, in a sense, so the Vermont's Workers' Compensation Act is mandatory. RSD transportation was required to secure compensation for Mr. Williams because compliance with the security requirements. It was required by law. I understand that. But I think the question that Judge Park asked you earlier was, why isn't it enough to satisfy the Postal Service's obligations that they required this insurance to be provided? They required their subcontractors to comply with the law. And so I understand your legal argument that that wouldn't be enough. But you do agree, factually, that there was such a requirement, because I couldn't find it anywhere in the contract. I would agree that there did seem to be such a requirement. Okay. If I can just ask you to expand on your candidate argument in light of Welch versus Home to Incorporated, because there, the Vermont Supreme Court said that the legislature was aware of the employment pattern between subs and general contractors, which involved outsourcing specific responsibilities, including insurance. And then relying on candidate, it said that an employee is not entitled to both workers' compensation benefits and recovery under common law negligence. Two points. First, again, Welch was brought under the exception to the exclusive remedy provision under Section 624 for third parties. And then second, in Smith, a later decision, the court confirmed that the employee can both accept workers' compensation benefits and then turn around and sue the non-compliant employer pursuant to Section 618B. Okay. Thank you. Thank you. Thank you, Counsel. Counsel? May it please the Court. Kaitlin Hazard on behalf of the United States. The district court correctly held that it lacks subject matter jurisdiction because the FTCA has not waived the government's sovereign immunity here. At the time of his injury, Mr. Williams was protected by a workers' compensation policy. The Postal Service required his direct employer to maintain that policy. The Postal Service paid the cost of that policy, and Mr. Williams received benefit for his  Could you identify for me where in the contract the Postal Service requires this insurance to be provided? Yes, Your Honor. Are you asking where in the contract it requires or where it shows that it was paid? There is a provision that says that the government will be responsible for adjusting payments if various costs increase or decrease, including increases and decreases in workers' compensation insurance. I see that provision, so I know where that is. I'm looking for where there is any requirement that RSD obtain workers' compensation insurance. I see the place where the presence of workers' compensation is a favorable factor in assessing bids, but that doesn't require that it be purchased. I see a provision, which I think is cited in your brief, that applies to a requirement that they purchase motor vehicle liability insurance, but I was not able to find something that says, thou shalt, as part of this contract, take care of insuring, be sure to purchase workers' comp insurance. Yeah, I'm happy to grab the exact policy. There is a provision that requires workers' compensation, and it's also a default if the supplier fails to provide proof of workers' compensation, but if you could just give me a minute, I can grab the exact policy. Okay, well, maybe at the end of, you know, after the rebuttal, if you just get up and cite it for me, that would be very helpful, because I couldn't find it. Thank you. Mr. Williams wasn't left without a remedy here. The Vermont workers' compensation scheme worked exactly as intended. Permitting a second recovery in tort here would be inequitable, where the United States has already paid for the cost of workers' compensation, and it's also contrary to the prohibits imposing this type of double recovery on employers, as well as prohibiting this type of double, I'm sorry, this type of double liability on employers, while prohibiting this type of double recovery for employees. There's no precedent under Vermont law that permits an injured employee to sue an indirect statutory employer when the direct employer has secured workers' compensation before the  employee. The district court correctly held that under Vermont law, in a multiple-employer situation, the employers can collectively secure workers' compensation. They're not required to independently and redundantly do so. And where do you find that? What is the case that you're citing for that proposition? In Candido, the Vermont Supreme Court explicitly said that in a multiple-employer situation, so long as one of the employers has secured workers' compensation, quote, employers may contract among themselves to limit liability. There are several other reasons why the United States has not impermissibly contracted out its liability here. First, as I've mentioned, the Postal Service paid for the workers' compensation insurance here. Also, if the direct employer had failed to actually go ahead and obtain that workers' compensation policy, under Vermont law, both the direct employer and the indirect employer of the Postal Service would be primarily liable for a single award. However, that doesn't mean Mr. Williams would be able to sue each of the employers independently for the full amount of the award. And then finally, under the prohibition against contracting out liability is intended to address situations where an employer is trying to evade liability by characterizing their workers as independent contractors or leased workers, and that's simply not the case here. All federal circuit courts that have addressed similar circumstances have held that the FTCA doesn't waive sovereign immunity under these circumstances when the United States has required its contractor to maintain insurance. Right. I have read all those cases and I agree with you. They say that. They are all, though, of course, applying state law, really, right, of different states. Under the FTCA, we look to state law to see if the United States would be liable under state law. Yes, if a private employer would be liable under the same circumstances. That's right. And so, and all of those cases leave open the question of what if the government or the private party to which it is being analogized hadn't had such a requirement in their contract. But you're right that they all say where the government has required it, that the government is not liable because a private employer doing the same thing would not be liable under the law of whatever state it was that the circuit was dealing with at the time. That's correct. So the analysis of whether the United States is in like circumstances to a party that would get here, like immunity under state law, that is a federal law analysis.  And my last question is, what do you make of Smith against Dezotel's? We don't believe that decision's applicable at all here. That case dealt with a situation where there was a single employer and that employer had never secured workers' compensation before the injury. So it's distinguishable because there was no security before the injury. The employer did actually pay the appropriate amount that would have been paid, right? It wasn't a case where they went bankrupt or something and they hadn't gotten insurance or anything of the sort. It was a case where they paid the money and still they were allowed to be sued because they hadn't gotten insurance. Why isn't that, in the double employer situation, why is it different? The statutory employer, the general contractor, is in the same position, really. They managed to, it managed to turn out that the guy got what he was entitled to. And yet there's a suit being filed because they hadn't actually assured that or gotten the insurance on their own anyway. Isn't that exactly what the employer in Smith was stuck with? That is the situation in Smith. There is a key distinction about when the workers' compensation is provided. And so it's really important under the state policy that that workers' compensation be secured in advance because that ensures that the employee will be protected when the injury happens. It's a material difference that the workers' compensation was only voluntarily provided after in Smith. You can't secure that. So from a policy perspective, it's significant under Vermont law that here the workers' compensation was secured in advance. Right. So here we're back to the situation where there was insurance. It was guaranteed that he would be taken care of. And your point is the government did in fact require that that happen. And even more so, then they went on to pay, or presumably to pay. The workers' comp premiums were, I believe, included in the bid as one of the expenses that was going into this. It's not exactly a cost plus, but that was calculated as part of the price that the government would pay. That's correct, Your Honor. Waivers of sovereign immunity are to be construed strictly in favor of the sovereign. And as the plaintiff, Mr. Williams, has the burden of establishing subject matter jurisdiction, he has not done so here. So unless the court has further questions, we respectfully ask that the court affirm the district court's decision.  And my only remaining question is, with the indulgence of the presider, if you could look up where exactly that requirement is in the contract, I'd appreciate that. Absolutely, Your Honor. Thank you. Thank you, counsel. Mr. Spicer, you're preserved a couple minutes for rebuttal. Thank you. I'd like to address just a couple of points that were raised here today. In Smith, it's not different under a multiple employer context whether the employer receives immunity or not when it doesn't actually secure compensation for the employee. Again, Smith is about a different policy. Smith notes that under Section 618D, the purpose is actually to sanction the noncompliant employer. And I thought the government was saying that that rationale applies when the insurance is procured. When they didn't have insurance in the first instance, that's when the sanction would make sense. The language of Section 618B and D is quite clear. When an employer fails to secure compensation for their employee, the employee has the option to elect to receive compensation for that or to pursue a civil action against the employer. I'd also like to just point out that in Candido, the court did not say that a direct employer is immune from suit if it contractually requires the indirect employer to secure insurance. And it explicitly said that it wasn't going to reach that question in Candido. Instead, it provided the injured worker with some solace. It says, unlike other states' workers' compensation acts, Vermont's is mandatory. Once an employer-employee relationship is found, the employer cannot avoid liability under the act by any contract, rule, regulation, or any other device whatsoever. And again, it cites Section 625's prohibition on contracting out the obligations under the act. But what's clear here is that to receive an immunity, an employer must secure compensation pursuant to Section 687's mandate, or the employee must knowingly waive his right to sue pursuant to Section 618D. Neither of those occurred here. Therefore, the United States, if a private person under the circumstances of this case, would be liable to Mr. Williams pursuant to the remedies afforded under Vermont's Workers' Compensation Act. Mr. Williams requests that this court reverse the district court's decision and allow this case to proceed. Thank you. Thank you, counsel. Ms. Hazard, did you have a citation for us? Yes, your honors. The relevant sections of the solicitation are attached to our motion to dismiss, which is docket number 32, exhibit 5, so 32-5. On page 10 of the contract, it lists supplier capabilities, which are, to your honors' point, factors, and proof of workers' compensation insurance. They need to demonstrate a copy of the insurance certificate. Yeah, they need to provide it if they are relying on having workers' comp as a plus factor. But they're not explicitly not required to have that. It's just one factor among many. But I guess your point is, presumably, they did provide such proof, and that somehow factored into everything. They did. I think it's also significant that failure to carry workers' compensation insurance when required is grounds for default. So they can... And where does it say that? What does that say? It's on page, again, same document, so 32-5 in the record. It's on page 23. It's a little confusing because the default section goes from page 22 to 23, but it's at the top of page 23. I would find it easier, just what is the clause number or the section number of it? Because the pagination is complicated. It's clause B69, events of default. Thank you. Thank you, your honors. Thank you, counsel. Thank you both. We'll take the case under advisement.